USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/2/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUIS RAMIRO AVILES, et al.,<br>　　　　　　　　　Plaintiffs,<br><br>　　　　-v-<br><br>S&P GLOBAL, INC., et al.,<br>　　　　　　　　　Defendants. | **17-CV-2987 (JPO) (KHP)** |
| FERNANDO RAUL BENEDETTO, et al.,<br>　　　　　　　　　Plaintiffs,<br><br>　　　　-v-<br><br>ATC REALTY FIFTEEN, INC., et al.,<br>　　　　　　　　　Defendants. | **17-CV-6087 (JPO) (KHP)** |
| HORACIO NESTOR ACEBEDO, et al.,<br>　　　　　　　　　Plaintiffs,<br><br>　　　　-v-<br><br>ATC REALTY FIFTEEN, INC., et al.,　Defendants. | **17-CV-7034 (JPO) (KHP)** |
| FREDERICO ALVAREZ, et al.,<br>　　　　　　　　　Plaintiffs,<br><br>　　　　-v-<br><br>ATC REALTY FIFTEEN, INC., et al.,　Defendants. | **18-CV-128 (JPO) (KHP)** |
| HECTOR JORGE ARECO, et al.,<br>　　　　　　　　　Plaintiffs,<br><br>　　　　-v-<br><br>ATC REALTY FIFTEEN, INC., et al.,<br>　　　　　　　　　Defendants. | **18-CV-2416 (JPO) (KHP)** |

**OPINION AND ORDER ON VARIOUS DISCOVERY MOTIONS**

**KATHARINE H. PARKER, United States Magistrate Judge**

Presently before this Court are several discovery-related motions. As many of them are substantially related, the Court addresses them together below. Specifically: (i) Defendants Smith Estate and Wells Fargo,[1] have moved for permission to conduct additional discovery as to the so-called Pre-2011 Plaintiffs (ECF No. 563); (ii) Plaintiffs have moved for a Protective Order for phased discovery precluding all Defendants from seeking additional individualized discovery from Plaintiffs until after resolution of common issues (ECF No. 565); (iii) Defendant Wells Fargo has moved to compel discovery regarding its statute of limitations defense (ECF No. 573); and (iv) all Defendants have moved to compel Plaintiffs to complete their production and provide other information about the process of collection, contending that the production has been inadequate (ECF No. 593).

**BACKGROUND**

The Court assumes familiarity with the facts and thus does not elaborate on the factual assertions except as needed for context.[2] Plaintiffs (a group of nearly 500 investors located outside of the United States) have asserted a dozen individual, derivative and class claims in this action, all stemming from their investment in the Lifetrade Funds and total loss of their investment when the Funds defaulted on a line of credit, resulting in Wells Fargo foreclosing on

---

[1] "Wells Fargo" refers collectively to Wells Fargo Bank, N.A., Wells Fargo Bank Northwest, N.A. (n/k/a Wells Fargo Trust Company, N.A.), Wells Fargo Delaware Trust Company, N.A., and ATC Realty Fifteen, Inc. (together, the "Wells Fargo Defendants")

[2] For a full recitation of the facts see *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019).

the debt and acquiring the Funds' assets, which had been pledged as collateral. Plaintiffs charge the former and now deceased head of Lifetrade, Roy Smith, with, among other things, breach of fiduciary duty, fraud and misrepresentation stemming from his mismanagement of the funds and concealing that the Funds were paying exorbitant fees to companies controlled by Smith and then lying to investors about the true financial state of the Funds and the meaning of the S&P rating of the Funds and hiding the settlement with Wells Fargo pursuant to which it acquired all of the Funds' assets. They charge Wells Fargo with aiding and abetting Smith's breach of fiduciary duty and unconscionability in connection with its settlement agreement with the Funds, which they say was concealed from investors.[3] They charge Standard & Poors ("S&P") with recklessly including certain information about the Funds' assets in its ratings report that was untrue and misleading to investors. The Honorable J. Paul Oetken found certain fraud-based claims to be time-barred, leaving a large group of plaintiffs who invested in the Funds prior to April 24, 2011 with more limited claims against S&P and the Estate of Roy Smith ("Estate"); however, these plaintiffs still have breach of fiduciary duty claims against the Estate and foreign law claims against the Estate and S&P.

There are approximately 450 plaintiffs who invested prior to April 24, 2011 ("Pre-2011 Plaintiffs") and about sixty-six Plaintiffs who invested more recently ("Post-2011 Plaintiffs") with individual claims against the Estate and S&P. Some of the plaintiffs are institutional investors. Four Plaintiffs are prosecuting the derivative claims of breach of fiduciary duty on

---

[3] The aiding and abetting claim against Wells Fargo rises and falls on the breach of fiduciary duty claim against the Estate of Roy Smith.

behalf of the Lifetrade Funds (hereinafter "Derivative" Plaintiffs) against the Estate and the aiding and abetting and unconscionability claims against Wells Fargo. One of the derivative Plaintiffs, Rafael Mendoza de la Torre, has indicated that he is withdrawing as a derivative plaintiff, although he will remain an individual Plaintiff. The Plaintiffs are all located abroad, making discovery more expensive insofar as discovery requests and responses must be translated into or from Spanish and Japanese and because of other expenses associated with conducting discovery outside of the District and the United States. Some of the Plaintiffs have died and many are elderly or disabled, also complicating discovery.

**DISCOVERY THUS FAR AND THE ISSUES RAISED BY THE PARTIES**

To manage the scope and sequence of discovery appropriately and efficiently, the Court directed the parties to develop a standard set of contention interrogatories/written deposition questions that would be furnished to the Pre-2011 Plaintiffs in an electronic survey format in their native languages that they could answer and attest to electronically. The goal is to eliminate or reduce the need for depositions and minimize costs. The Court further directed the parties to jointly review and select an appropriate vendor to administer the dissemination of questions and collection of responses.

The Defendants also propounded document requests on the Plaintiffs. Plaintiffs, however, have missed numerous deadlines and had to obtain extensions of deadlines. Moreover, Plaintiffs did not initially closely supervise the collection of documents, allowing their clients to self-collect. The Court later ordered them to go back and more closely supervise the searches. They also produced documents without metadata and failed to indicate which

documents came from which Plaintiffs.[4] As a result, the Court required them to "create a very granular list" that identifies by Plaintiff how each communicated, the location of their documents, their document retention practices in the regular course, and how the search and collection of their documents was conducted. Sept. 14, 2021 Case Management Conference Transcript, ECF. No. 529. The Court also required Plaintiffs to comply with Rule 34 and state as applicable when a particular Plaintiff does not have documents responsive to particular document requests and the reason why they do not have the documents (e.g., a broker or agent has them, lost or destroyed, never had). *Id.*

Plaintiffs subsequently prepared a chart that provides the Bates range of documents for each Plaintiff, whether emails were searched and whether the individual conducted a self-search or attorney-assisted search. For some Plaintiffs, it indicates that the Plaintiff has no responsive electronic documents. The chart also identifies the account where the Plaintiff's shares were held (e.g., at Lifetrade or at a bank/broker) and whether the Plaintiff produced an investment record (electronic or hard copy) of Lifetrade ownership. For some Plaintiffs, the chart indicates the name of the investor or account if different from the named Plaintiff. For some Plaintiffs, information is missing.

Many Plaintiffs had few documents responsive to Defendants' requests. Wells Fargo questions the volume of documents produced given that some of the Plaintiffs are institutional investors or had money managers and contends certain information is still outstanding.[5] For

---

[4] Some of the elderly Plaintiffs did not maintain electronic files and only had paper records of their investments in Lifetrade—which occurred between 2006 and 2011.

[5] The four Derivative Plaintiffs have produced only 189 documents and only three have answered interrogatories.

example, it states that it had received little to no documents pertaining to Lifetrade's shareholder meetings in 2012 and communications with its shareholders about the debt owed to Wells Fargo, Wells Fargo's foreclosure notice on the debt and the settlement agreement between Lifetrade and Wells Fargo. This information is purportedly critical to Wells Fargo's defense to Plaintiff's claim that Lifetrade in collusion with Wells Fargo concealed the settlement from investors. Likewise, Wells Fargo says it has received little to no documents reflecting Lifetrade's communications with investors about Lifetrade's financial condition, refinancing efforts, transfer of assets to Wells Fargo as part of the settlement or litigation brought against the funds. It contends that Plaintiffs did not seek responsive documents from their brokers, who are in Plaintiffs' control. Wells Fargo also contends that Mendoza has information relevant to its statute of limitations defense, arguing that when individual shareholders knew about the settlement or other key events would enable Wells Fargo to show that the claims against it are time-barred. It wants Mendoza to respond to more fulsome discovery on these issues, whereas Plaintiffs contend Mendoza should only have to provide responses to the electronic survey questions described above. The parties attempted to enter into a stipulation to obviate the need for discovery but could not agree to stipulate that the statute of limitations for the claim against Wells Fargo accrued as of August 14, 2012 (the date of the settlement agreement) and not the date of discovery of the settlement agreement by any one Plaintiff; however, Plaintiffs have conceded in filings with the Court that individual reliance is not an element of the

---

Plaintiffs in total have produced more than 20,000 documents (approximately 140,000 pages), though approximately half were produced by a director of the funds' investment manager, not Plaintiffs themselves. No metadata was produced for this production, contrary to the parties' ESI protocol at ECF No. 322.

derivative claims.  It believes it should be permitted to depose all four Derivative Plaintiffs on the basis of the Derivative Claims.[6]

The Estate also questions the adequacy of the production from the Pre-2011 Plaintiffs. Insofar as each has individual claims against the Estate for breach of fiduciary duty and violations of foreign law, the Estate seeks information concerning their standing to assert individual claims.  For example, the Estate claims it needs additional information and potentially depositions on, among other topics, the duty Roy Smith owed to each of them (as opposed to the corporate entity) and his alleged breach; the circumstances of their investment in Lifetrade; whether they acquired their shares from another investor, what they relied on in making and maintaining their investment in the funds; and whether they sold or transferred their shares prior to the settlement agreement with Wells Fargo.  The Estate also seeks documents and testimony reflecting Smith's alleged "repeated assurances" that they were working in Plaintiff's best interest following the settlement agreement.

As for the Post-2011 Plaintiffs, only about one-third appear as shareholders in Lifetrade records.  The remainder, according to Defendants, have not produced documentation confirming that they invested after April 24, 2011.  Some of the discrepancies in Lifetrade's records are no doubt because some Plaintiffs invested through a financial institution such that the individual Plaintiff's name would not be in Lifetrade's database—only the name of the

---

[6] Apparently, two Derivative Plaintiffs (Miranda and Wehbi) do not appear in Lifetrade's records as being shareholders.  Both of these Plaintiffs represented that they reviewed the NAV figures for the funds regularly, but produced only a small set of account statements that do not show whether they held the Lifetrade investment in their name.  Three have not provided documentation showing continuous ownership—which is relevant to standing.  They have failed to produce documents showing their fee arrangement with counsel or a pre-suit demand prior to commending this action.

financial institution or intermediary would be in Lifetrade's record. Some Plaintiffs have indicated they were assigned interests in the Lifetrade Funds or assigned the claims of an original investor or invested in the Fund through a separate entity. As to these Plaintiffs, documentation confirming their standing to pursue claims has not been produced according to Defendants. Many of the Plaintiffs have not produced any statements or ratings reports issued by S&P, and a large portion confirmed that a broker, dealer or investment advisor was involved in their decision to invest in the Lifetrade Funds but have not produced documents showing communications about the investment. Only about two-thirds of the Pre-2011 Plaintiffs produced account statements reflecting an investment in the Lifetrade Funds. The institutional Plaintiffs have produced scant documents about their investment guidelines (e.g., whether they required an S&P rating—as Plaintiffs' have pleaded), legal status or organizational structure. [7] The missing documents are relevant to defenses to the claims of breach of fiduciary duty, among other defenses. According to Defendants, Plaintiffs' collection process has been unclear and they seek clarity on the process and a date certain by when production must be complete because they do not wish to be sandbagged later in the litigation with newly discovered responsive documents. Defendants also seek to depose the Post-2011 Plaintiffs.

All Defendants seek to depose the Post-2011 Plaintiffs or a large number of them and also wish to conduct depositions, if necessary, Wells Fargo and the Estate seek depositions of at least some of the Pre-2011 Plaintiffs, after review of Plaintiffs' complete production and

---

[7] The Court only lists some of categories of documents missing from Plaintiffs' production—there are others that Defendants expect Plaintiffs should have that also were not produced.

responses to the electronic survey.

Plaintiffs object to broad discovery of the Plaintiffs. They contend that if a class is not certified, a trial of the individual claims of the approximately 500 Plaintiffs could not be done in a single trial. They propose that discovery on individual reliance issues be deferred until a later time, after a decision on class certification, and that individual reliance could be addressed in "bellwether trials" at some point. In other words, they seek a phased approach to discovery where individual reliance issues from the Pre-2011 Plaintiffs and even the Post-2011 Plaintiffs be deferred and dispositive motions and trials on common issues be conducted first, as they may obviate the need for burdensome discovery from 500 people all located abroad.

## DISCUSSION

1. **Applicable Legal Standard**

A district court has "wide latitude to determine the scope of discovery," and "abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." *In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008) (citation omitted). The Federal Rules provide that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). In making rulings on the scope of discovery, a court "must limit the frequency or extent of discovery otherwise allowed by these rules" if:

9

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Lastly, Fed. R. Civ. P. 1 provides that the Rules be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

When carrying out its duty to manage litigation, a court "may, for good cause issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden is upon the party seeking non-disclosure or a protective order to show good cause [and] the trial court has broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Melendez v. Primavera Meats, Inc.*, 270 F.R.D. 143, 144 (E.D.N.Y. 2010) (internal quotations, alterations, and citations omitted). Lastly, under Rule 37, a party may move for an order to compel discovery when it has received no response to its interrogatory or document requests, provided the movant has in good faith conferred with the opposing party in an attempt to secure the sought responses or documents. *Aetna Life Ins. Co. v. Licht*, 2005 WL 180873, at *1 (S.D.N.Y. Jan. 27, 2005) (citing Fed. R. Civ. P. 37(a)(2)(B)).

2. **Application**

This Court has been closely supervising discovery in this case and has from the outset attempted to identify with the parties methods of discovery that will reduce costs and expedite

production of information relevant to the claims and defenses in an efficient manner.  Having considered all of the parties' concerns, the Court resolves the motions as follows:

Document Production

- All Plaintiffs (that is, Pre-2011, Post-2011 and Derivative Plaintiffs)[8] shall complete their document production by **February 28, 2022**.  Plaintiffs are reminded that under Fed. R. Civ. P. 34 they are obliged to state that they do not possess responsive documents (if that is the case) to particular document requests.  Plaintiffs may create an omnibus chart for this purpose to the extent they believe doing so would be most efficient.  They must make these representations by **February 28, 2022**.  Plaintiffs shall provide an updated chart indicating which documents were produced by which Plaintiff by **February 28, 2022**.  To the extent Plaintiffs have collected electronic documents with metadata, they shall provide a metadata overlay by **February 16, 2022**, consistent with the parties' ESI protocol.  Plaintiffs are reminded of their obligation under Fed. R. Civ. P. 26(g) to conduct a reasonable search for documents.[9]  The Court does not require a separate certification, as requested by Defendants, as the Court finds no basis to believe that Plaintiffs have not attempted to diligently collect documents.  To the extent they do

---

[8] To the extent Mendoza remains a Plaintiff for any purpose, he shall comply with his obligation to produce documents.

[9] It is unclear the extent to which Plaintiffs have completed a reasonable search.  Plaintiffs' counsel stated that for "Elizabeth Boote and Raul Oscar Ferrari it is unknown whether electronic documents exist." (Armitage Decl. pg. 7, ECF No. 567.)  This is not an appropriate response.  They either exist or they don't.  Plaintiffs' counsel has a duty to inquire as to what relevant information their client has, what is left to be produced, and what steps were undertaken to locate responsive material.  *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (ordering Defendant to "provide the Plaintiff with a detailed explanation of the search protocol it implements.").

not have relevant documents, they will face obstacles proving their claims. Plaintiffs may be precluded from relying on documents produced after February 28, 2022 in connection with class certification and dispositive motions and trial.

- Plaintiffs shall produce their final privilege log by **March 11, 2022.**

Depositions and Additional Discovery

- No depositions shall be taken of the Pre-2011 Plaintiffs until completion of the survey. The survey questions are intended to eliminate or reduce the need for in-person or video depositions. The survey should be issued by no later than **February 28, 2022** and responses should be provided by no later than **March 31, 2022**. No additional document requests or interrogatories or requests to admit shall be served on these Plaintiffs without leave from this Court.[10] Defendants may propose a discovery plan for limited additional discovery, including depositions, by **April 8, 2022**.

- Defendants may depose all Derivative Plaintiffs, including Mendoza. Those depositions shall be conducted in April and completed by **April 29, 2022**. To the extent they have not already done so, the Derivative Plaintiffs shall answer the interrogatories propounded on them.

- The parties are directed to meet and confer to determine the best method to obtain information from the Post-2011 Plaintiffs on the issue of reliance and other key issues. The Court rejects Plaintiffs' argument that discovery on reliance should be deferred for a

---

[10] To the extent Defendants have propounded interrogatories on the Pre-2011 Plaintiffs, the Court finds good cause at this time to excuse these Plaintiffs from further responding insofar as they will be answering the survey questions.

12

number of reasons, including, without limitation, that this case has been pending since 2017, many of the Plaintiffs are elderly and there is a substantial risk that they may die or become unable to participate in discovery if it is delayed, the events in question took place a decade ago such that memories are already faded and will continue to fade with the passage of more time, Plaintiffs have asserted individual claims of fraud which Defendants are entitled to explore and understand.[11]  The Court encourages the parties to evaluate whether electronic survey questions can reduce the need for individual depositions and whether time limits are appropriate.  The parties shall be prepared to discuss their proposed plan at the **March** case management conference.  No deposition notices or other discovery shall be served on the Post-2011 Plaintiffs until the parties meet and confer regarding a plan for completing discovery as to these Plaintiffs and until after the March case management conference.

- Notwithstanding the above, to the extent Plaintiffs have identified any class representatives in connection with the class certification briefing or submitted affidavits from individual Plaintiffs, Defendants shall be permitted to depose such Plaintiffs.  Such depositions shall take place as soon as possible and no later than **April 29, 2022**.

---

[11] To the extent Plaintiffs argue that the Court should adopt class action/mass tort discovery mechanisms, this argument is rejected.  Here, each Plaintiff is a named party to the action with individual claims.  "Like any other civil litigant in a United States court, Plaintiff has the obligation under Fed. R. Civ. P. 26 to provide relevant information and testimony to the Defendant that can be used . . . to defend itself from a potentially sizable damage award under United States [law]." *Consejo De Defensa Del Estado De La Republica De Chile* v. *Espirito Santo Bank*, 2010 WL 2162868 at *3 (S.D. Fla. May 26, 2010).

Clarification on Scope of Discovery Sought by Wells Fargo

Wells Fargo seeks information from Pre- and Post-2011 Plaintiffs are relevant to its statute of limitation defense, which it argues is three years. As noted by Judge Oetken in his 2019 opinion in this case, "where, as here, a shareholder asserts a fiduciary breach claim derivatively on behalf of a company, New York law typically applies a six-year limitations period regardless of whether the claim sounds in fraud." *Aviles*, 380 F. Supp. 3d at 295; *see also Skorr v. Skorr Steel Co.*, 2005 WL 1803075, at *2 (N.Y. Sup. Ct. July 25, 2005) ("A shareholder derivative action, regardless of the theory underlying the claim, is governed by [a] six year statute of limitations."). Accordingly, as the applicable statute of limitations is six years, and not three, Wells Fargo fails to show how such discovery would be relevant to the defense it seeks to assert.

Wells Fargo also seeks discovery from Pre- and Post-2011 Plaintiffs to "demonstrate[e] the absence of a fiduciary breach and defenses related to mitigation, acts and omissions by one or more Plaintiff, contribution, and set off." (Defs. Opp., pg. 20.) As the pending aiding and abetting breach of fiduciary duty claim first requires a showing that Smith and/or Marcum did indeed breach their fiduciary obligations, Wells Fargo is entitled to explore whether a breach did occur and the extent of such breach. [12] Thus, subject to the limitations set forth above, Wells Fargo may explore this subject area.

---

[12] To state a claim for aiding and abetting breach of fiduciary duty, "a plaintiff must allege (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach [by rendering substantial assistance], and (3) that [the] plaintiff suffered damage as a result of the breach." (internal citation and quotations omitted). *Aviles*, 380 F. Supp. 3d at 306.

14

Request to Strike Allegations

To the extent Defendants have requested that certain of Plaintiffs' allegations be stricken, the request is denied. The Court appreciates Defendants' frustrations, but having supervised discovery in this matter, the Court finds no reason to sanction Plaintiffs under Rule 37 at this point. Plaintiffs have been actively pursuing this case, met and conferred with defense counsel, and engaged in discovery. At most they are guilty of underestimating the time required to obtain discovery from 500 Plaintiffs and vigorous advocacy.

**CONCLUSION**

For the reasons stated above, and to avoid any confusion amongst the parties, the Court GRANTS in part and DENIES in part each of the following motions: (1) Defendants Smith Estate and Wells Fargo motion to compel discovery from the Pre-2011 Plaintiffs (ECF No. 563); (2) Plaintiffs' motion for a Protective Order (ECF No. 565); (3) Defendant Wells Fargo's motion to compel (ECF No. 573); and (4) Defendants' motion to compel production from certain Plaintiffs (ECF No. 593).

**SO ORDERED.**

DATED:  New York, New York
        February 2, 2022

_____
KATHARINE H. PARKER
United States Magistrate Judge